UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHAHRAM AFSHANI, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CV-1421-X |
| | § | |
| SPIRIT REALTY CAPITAL INC., et al., | § | |
| | § | |
| | § | |
| *Defendants*. | § | |
| | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Pending before the Court are three motions: defendant Spirit Realty Capital, Inc.'s ("Spirit Realty") Motion to Strike (Doc. 71), Spirit Realty's Motion for Summary Judgment (Doc. 73), and defendants SMTA Shopko Portfolio I LLC's ("SMTA") and Spirit SPE Portfolio 2006-1 LLC's ("SPE") Motion for Summary Judgment (Doc. 77). After reviewing the motions, responses, replies, and applicable law, the Court **GRANTS** the defendants' motions for summary judgment (Docs. 73, 77) and **FINDS AS MOOT** Spirit Realty's motion to strike (Doc. 71).

**I. Background**

This dispute arises out of a pair of Wisconsin-based real estate deals. Spirit Realty owns both the defendant companies in this case: Spirit SPE Portfolio 2006-1, LLC and SMTA Shopko Portfolio I, LLC. SPE owned a property in La Crosse, Wisconsin, and SMTA owned a property in Onalaska, Wisconsin. Both SPE and

SMTA leased their respective properties to Shopko, a chain of retail stores headquartered in Green Bay, Wisconsin.

SPE put the La Crosse property up for auction.  Plaintiff Shahram Afshani, an experienced retail investor who specializes in purchasing "[o]verleveraged" real estate properties,[1] won the right to purchase SPE's La Crosse property at auction. After the auction, Afshani and Travis Carter, who was jointly SRC's senior vice president and SPE's and SMTA's managing agent, began negotiations to close the deal.

Representations and statements made during the closing of the La Crosse property form the basis of this dispute.  Between June and July of 2018, which was the escrow period of the La Crosse Property, Afshani alleges that Carter generally represented that Shopko was a financially stable business that would pay its lease at the La Crosse Property for years to come.  More specifically, Afshani alleges that Carter told him that Shopko's "optical and pharmacy divisions were realizing phenomenal profitability."[2]  Afshani also alleges that Carter told him that Shopko was "closing its nonproductive stores to strengthen its overall financial position."[3] And Afshani alleges that Carter told him that Spirit Realty "was retaining most of its Shopko holdings because they believed in Shopko's long-term viability."[4]  Due in

---

[1] Doc. 75-1 at 14 (Afshani Depo.).

[2] Doc. 82-1 at ¶ 3 (Afshani Decl.).

[3] *Id.*

[4] *Id.*

part to Carter's representations, Afshani closed on SPE's La Cross Property.[5] Additionally, based on the same representations by Carter, Afshani closed on SMTA's Onalaska Property a few weeks later.[6]

At closing, SPE and SMTA not only transferred their existing Shopko leases to Afshani, but SPE and SMTA also renewed their Shopko leases to 2031 (La Crosse) and 2035 (Onalaska) under nearly identical purchase agreements. Notably, these purchase agreements included a waiver-of-reliance clause, which attempted to disclaim any warranties, statements, or reliances made during the negotiation process.

After finding out that Shopko was in less-than-ideal financial shape, Afshani brought breach-of-contract and fraud claims against Spirit Realty, SPE, and SMTA in Texas state court seeking damages and judicial recission of the purchase agreements. Defendants removed this case to this Court. After a brief stint at the Fifth Circuit, only Afshani's fraudulent-inducement and fraudulent-concealment claims remain. The defendants now move for summary judgment.

## II. Legal Standard

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual

---

[5] *Id.* at ¶ 11.

[6] *Id.*

[7] FED. R. CIV. P. 56(a).

3

dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[8] Courts "resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[9]

### III. Analysis

There are currently three ripe motions in this case. By two separate motions, the defendants have moved for summary judgment.[10] Additionally, Spirit Realty moves to strike Afshani's jury demand.[11] The Court will address the defendants' summary judgment motions.

### Motions for Summary Judgment

The defendants move for summary judgment on multiple grounds.[12] First, Spirit Realty argues that that Afshani's fraud claims fail because Afshani cannot establish reasonable reliance due to his failure to conduct a "basic investigation" into the details of this commercial real estate deal.[13] Second, the defendants argue that Section 6.01 of the La Crosse and Onalaska purchase agreements contain a binding waiver-of-reliance clause which prevents Afshani from recovering on his fraud claims as a matter of law.[14] Third, as an evidentiary matter, the defendants argue that

---

[8] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (alteration in original) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[9] *Antoine v. First Student, Inc.,* 713 F.3d 824, 830 (5th Cir. 2013) (cleaned up).

[10] Docs. 73, 77.

[11] Doc. 71.

[12] *See generally* Docs. 74, 78.

[13] Doc. 74 at 18–21.

[14] *Id.* at 22–25; Doc. 78 at 27–28.

various evidence by which Afshani relies upon does not create a genuine dispute of material fact.[15]  Fourth, the defendants argue that Afshani's fraud claims are barred by the economic-loss rule.[16]  Fifth, Spirit Realty argues that Afshani cannot recover from his fraud claims because he did not suffer a "direct and personal injury."[17]  And sixth, Spirit Realty argues that, because Afshani did not move to remand this case back to a Texas state court, Afshani has admitted that he has no cause of action against Spirit Realty.[18]

The defendants' second argument (whether  Section 6.01 of the La Crosse and Onalaska purchase agreements contain a binding waiver-of-reliance clause) is dispositive.

## Contractual Disclaimer

The parties dispute whether the purchase agreements express language bars Afshani's fraud claims.[19]  The defendants argue that Section 6.01 of the La Crosse and Onalaska Purchase Agreements expressly disclaims any representations, warranties, or reliances, so Afshani cannot recover as a matter of law.[20]  Afshani responds that, generally, Texas courts do not enforce contractual limitations of tort liabilities, and even if they did, the purchase agreements at issue in this case do not

---

[15] Doc. 74 at 25–27; Doc. 78 at 14–21.

[16] Doc. 74 at 29–31; Doc. 78 at 28–29.

[17] Doc. 74 at 30–31.

[18] *Id.* at 31–32.

[19] *See generally* Docs. 74, 78, 80, 81.

[20] Doc. 74 at 22–27; Doc. 78 at 27–28.

clearly limit the defendants' liability for fraud.[21]   The Court agrees with the
defendants.

In Texas,[22] parties can agree to contractually disclaim reliance on
misrepresentations made during the contracting process, which has the effect of
precluding a fraudulent-inducement claim.  To do this, a contract must contain more
than simply a merger clause.[23]  Instead, the contract must have "a clause that clearly
and unequivocally expresses the party's intent to disclaim reliance on the specific
misrepresentations at issue."[24]   Specifically, "when determining if a waiver-of-
reliance provision is binding," courts "must always examine the contract itself and
the totality of the surrounding circumstances."[25]   As an evidentiary matter, courts
look to the presence of five factors when considering whether a waiver-of-reliance
provision is binding:

> (1) the terms of the contract were negotiated, rather than boilerplate,
> and during negotiations the parties specifically discussed the issue
> which has become the topic of the subsequent dispute;
>
> (2) the complaining party was represented by counsel;
>
> (3) the parties dealt with each other at arm's length;
>
> (4) the parties were knowledgeable in business matters; and

---

[21] Doc. 80 at 20–21; Doc. 81 at 26–27.

[22] Section 8.17 of the purchase agreements states that disputes "shall be governed by, and
construed with, the laws of the State of Texas."  Doc. 34-1 at 21.  The Court will therefore apply Texas
state law in determining this dispute.  *Cannon Oil & Gas Well Servs., Inc. v. KLX Energy Servs.,
L.L.C.*, 20 F.4th 184, 188 (5th Cir. 2021) ("Texas recognizes that 'parties can agree to be governed by
the law of another state.'") (quoting *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014)).

[23] *Int'l Bus. Machines Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 229 (Tex. 2019).

[24] *Id.*

[25] *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 60–61 (Tex. 2008).

(5) the release language was clear.[26]

In short, "[w]hen 'sophisticated parties represented by counsel disclaim reliance on representations about a specific matter in dispute, such a disclaimer may be binding, conclusively negating the element of reliance in a suit for fraudulent inducement.'"[27]

Here, all factors point in favor of the conclusion that the purchase agreements contain a binding waiver-of-reliance clause.  First, as to the negotiable contract and the parties' specific discussion of terms at issue in this case, the parties had an opportunity to negotiate the purchase agreement,[28] which specifically covers Shopko, its lease income, and financial viability.[29]   On the second factor, whether the complaining party was represented by counsel, Afshani does not dispute, nor does he supply any evidence, that he was unrepresented by counsel when he negotiated, reviewed, or signed the La Crosse and Onalaska purchase agreements.[30]

On the third factor, the complaining party's knowledge in business matters, Afshani, whose career spans four decades, has repeatedly told the Court that he is an expert real estate investor[31] familiar with investing in "very large and in some cases

---

[26] *Int'l Bus. Machines Corp.*, 573 S.W.3d at 229.

[27] *Id.* (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 332 (Tex. 2011)).  Furthermore, this analysis is "fundamentally" a legal question, *Forest Oil Corp.*, 268 S.W.3d at 55 & n.9, so it's ripe for determination at the summary-judgment stage.  *See Leibovitz v. Sequoia Real Estate Holdings, L.P.*, 465 S.W.3d 331, 347 (Tex. App.—Dallas 2015, no pet.).

[28] Doc 82-1 at ¶¶ 1–2 (Afshani Decl.) (declaring that he was "personally involved in all aspects" of this transaction, including "all due diligence conducted").

[29] Doc. 34 at ¶¶ 9, 16 (third amended complaint); Docs. 34-1, 34-2.

[30] On a somewhat related note, while Afshani hasn't provided evidence of being unrepresented during the La Crosse and Onalaska purchases, Afshani certainly had the *opportunity* to be represented by counsel.  Doc. 34-1 at 20 ("Seller and Purchaser were each given opportunity to consult with independent legal counsel of such party's choice.").

[31] Doc. 82-1 at ¶¶ 1–2.

very valuable properties."[32]  On the fourth factor, an arm's length transaction, there is no evidence in the record that Afshani and the defendants had any pre-existing relationship before this deal, or that any other facts undermine the arms-length nature of the deal.[33]

The fifth factor, clarity of the clause's language, also points in favor of this being an enforceable waiver-of-reliance provision, albeit the discussion is a little more long winded.  Three cases are instructive in determining what contractual language constitutes a clear disclaimer of reliance: *International Business Machines Corp.*;[34] *Forest Oil Corp.*;[35] and *Schlumberger Technology Corp.*[36]  In each of these cases, the Texas Supreme Court held that contractual language stating that neither party is "relying upon any representation made by or on behalf of [a party]" constituted a clear statement of release—with "relying upon" being the key phrase in each case.[37]

Here, by using the phrases "not been induced by" and "has not relied upon," Section 6.01 of the La Crosse and Onalaska purchase agreements clearly disclaim reliance:

---

[32] *Id.* at ¶ 2.

[33] "Courts look to the relationship to determine whether dealings are at arm's length. Key factors to consider are the closeness of the relationship and whether the alleged insider has control over the debtor." *In re Premiere Network Servs., Inc.*, 333 B.R. 126, 129 (Bankr. N.D. Tex. 2005) (citing *Matter of Holloway*, 955 F.2d 1008, 1011 (5th Cir. 1992)).

[34] 573 S.W.3d at 228–30.

[35] 268 S.W.3d at 60–61.

[36] *Schlumberger Tech. Corp v. Swanson,* 959 S.W.2d 171, 179 (Tex. 1997).

[37] *Int'l Bus. Machines Corp.*, 573 S.W.3d at 228 ("[Defendant] is not relying upon any representation made by or on behalf of [Plaintiff] that is not specified in the agreement."); *Forest Oil Corp.*, 268 S.W.3d at 59 ("None of them is relying upon any statement or any representation of any agent of the parties."); *Schlumberger Tech. Corp.*, 959 S.W.2d at 180 ("None of us is relying upon any statement or representation of any agent of the parties.").

> Purchaser *has not been induced by* and *has not relied upon* any statement, representation or agreement, whether express or implied, not specifically set forth in this Agreement or the Deed.  No Seller Party shall be liable or bound in any manner by any oral or written statement, agreement or information pertaining to the Property or this Agreement furnished by any broker, agent, employee or other Person.[38]

Thus, Afshani disclaimed his reliance by means of Section 6.01's clear language.[39]

 Each of Afshani's three arguments to the contrary fail.  First, Afshani argues that the waiver-of-reliance provision is only relevant to Afshani's previously dismissed contract claims and not his fraud claims.[40]  This is incorrect, as many courts have engaged in a waiver-of-reliance-clause analysis to determine the viability of a plaintiff's fraud-based claims, not just contract-based claims.[41]

Second, Afshani argues that "nothing in the purchase agreements disclaimed Plaintiff's reliance upon Defendants' representations regarding Shopko's financial condition."[42]  This argument also fails.  The waiver's language expressly waives Afshani's reliance on matters such as Shopko's "income, expenses [or] operations," "the accuracy or completeness of any information," or "any matter or thing affecting or relating to the Property or this Agreement not expressly stated in this Section."[43]  While Section 6.01's waiver is broadly phrased, Texas courts have applied the full

---

[38] Doc. 34-1 (La Crosse) (emphasis added); Doc. 34-2 at 13 (Onalaska) (emphasis added).

[39] *See Int'l Bus. Machines Corp.*, 573 S.W.3d at 228–30; *Forest Oil Corp.*, 268 S.W.3d at 60–61; *Schlumberger Tech. Corp.*, 959 S.W.2d at 179; *Leibovitz*, 465 S.W.3d at 346; *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 296 (5th Cir. 2016) (per curiam) (applying Texas law).

[40] Doc. 80 at 20.

[41] *See supra* note 39.

[42] Doc. 80 at 20.

[43] Doc. 34-1 at 13; Doc. 34-2 at 12–13.

effect of similarly broadly worded waiver provisions.[44]  And this Court must do so as well.

Third, Afshani cites a string of cases purportedly holding that Texas courts do not enforce contractual limitations of intentional torts.[45]  But none of Afshani's cited cases discuss waiver-of-reliance clauses.[46]  And even if they did, each of Afshani's cited cases comes from authority lower than the Texas Supreme Court, which has held that a valid waiver-of-reliance clause can prevent a claimant from pursuing fraud claims.[47]

In short, "parties who contractually promise not to rely on extra-contractual statements—*more than that, promise that they have in fact not relied upon such statements*—should be held to their word."[48]  Afshani is an expert in this industry who had every opportunity to walk away from this transaction for any reason he saw fit.  He didn't.  Instead, he freely signed a contract expressly disclaiming reliance on statements and representations made in the course of this transaction.  And in accordance with Texas law, this Court will hold Afshani to his word.  Therefore,

---

[44] *See, e.g.*, *Transcor Astra Group S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 478 (Tex. 2022) (holding that a waiver-of-reliance provision waiving any "statement or representation" included waiver of a company's failure to disclose bribery payments and offers), *cert. denied*, 143 S. Ct. 2493, 216 L. Ed. 2d 454 (2023).

[45] Doc. 80 at 21.

[46] *See, e.g.*, *Helms* v. *Sw. Bell Tel. Co.,* 794 F.2d 188, 193 (5th Cir. 1986).  The issue in *Helms* was the validity of a contractual limitation of a negligence claim.  And although the Fifth Circuit generally stated that "a Texas court may not enforce a contractual limitation of liability as a defense to an intentional tort such as fraud," *id.* at 193, this statement pre-dates the Texas Supreme Court's waiver-of-reliance-clause jurisprudence.

[47] *See supra* notes 35–37.

[48] *Transcor*, 650 S.W.3d at 477 (cleaned up).

because Afshani disclaimed his reliance, his fraudulent-inducement claim fails as a matter of law.

For identical reasons, Afshani's fraudulent-concealment claim also fails as a matter of law. To succeed on his fraudulent-concealment claim, Afshani must prove "(1) the existence of the underlying tort; (2) the defendant[s'] knowledge of the tort; (3) the defendant[s'] use of deception to conceal the tort; and (4) [Afshani's] reasonable reliance on the deception."[49] At base, the waiver-of-reliance clauses in the purchase agreements negates the fourth element of Afshani's fraudulent-concealment claim. But even if the purchase agreements in this case didn't negate a specific element of Afshani's fraud claim, the Texas Supreme Court instructs that enforceable waiver-of-reliance clauses bars all subcategories of fraud claims, even those lacking a "reasonable reliance" element.[50] In the Texas Supreme Court's words:

> The Swansons contend that even if the disclaimer of reliance precludes their claim that they were fraudulently induced to sign the release by Schlumberger's affirmative misrepresentations, it does not preclude their claim of fraud by non-disclosure. . . . The Swansons assert that the jury's verdict must be sustained because reliance is not an element of a claim for fraud by non-disclosure. We disagree. Reliance is an element of fraud. Fraud by non-disclosure is simply a subcategory of fraud because, where a party has a duty to disclose, the non-disclosure may be as misleading as a positive misrepresentation of facts.[51]

Therefore, Afshani's fraudulent-concealment claim also fails as a matter of law.

---

[49] *Vial v. Gas Sols., Ltd.*, 187 S.W.3d 220, 229 (Tex. App.—Texarkana 2006, no pet.).

[50] *See Schlumberger Tech. Corp.*, 959 S.W.2d at 181; *Leibovitz*, 465 S.W.3d at 347 (holding that a waiver-of-reliance clause "disclaimed the element of reliance necessary to bring a fraudulent concealment, fraudulent inducement, or fraud by nondisclosure affirmative defense").

[51] *Id.* (cleaned up).

## IV. Conclusion

Accordingly, the Court **GRANTS** the defendants' motions for summary judgment (Docs. 73, 77) and **FINDS AS MOOT** Spirit Realty's motion to strike, (Doc. 71).

**IT IS SO ORDERED** this 24th day of October, 2023.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE